OPINION OF THE COURT
Alfred D. Lerner, J.
In this CPLR article 78 proceeding, petitioner seeks to annul the selection by the respondents of a community residence for the mentally retarded on the basis of a violation of statutory procedures.
In July of 1978, petitioner received notice that respondent Young Adult Institute was interested in a site for retarded adults within its jurisdiction. A community meeting was held on August 2, 1978 at which time petitioner was urged to review the site in accordance with section 41.34 of the Mental *502 Hygiene Law, even though the effective date of the statute was September 1, 1978. Petitioner agreed with this proposal and a public hearing was held on September 21, 1978. At the hearing objections were raised to the site and five alternative locations were submitted to the Office of Mental Retardation. In the letter of November 14, 1978 sent by respondents, these sites were rejected. Notice was furthermore given at that time that no agreement could be reached and, as such, a hearing would be scheduled within the next 15 days before the Commissioner of the Department of Mental Hygiene. Petitioner protested the scheduling of a hearing and urged the agency to co-operate in continuing discussions as to alternative sites. After the December 7, 1978 hearing, a determination was made by the commissioner that the original proposed site conformed with the criteria set forth in the statute and was appropriate as a community residence.
Petitioner contends that the agency scheduling of a fact-finding hearing simultaneously with the urging of the alternative sites abrogated their right under section 41.34 (subd [b], par [4]) of the Mental Hygiene Law for a second opportunity to suggest sites within 15 days. Respondents assert that neither the November 14, 1978 letter which rejected the sites nor the subsequent letter announcing the date of the hearing precluded petitioner from suggesting additional locations.
In prior proceedings, a temporary injunction was granted enjoining further action with respect to the site in question and a cross motion for dismissal on the ground of the expiration of the Statute of Limitations was denied. It is well settled that the granting of this relief serves only to hold the matter in status quo and is not determinative of the ultimate questions involved (Walker Mem. Baptist Church v Saunders, 285 NY 462; Federal Waste Paper Corp. v Garment Center Capitol, 268 App Div 230, affd 294 NY 714; State of New York v Horsemen’s Benevolent & Protective Assn., 81 Misc 2d 577). However, with regard to the dismissal motion of respondents based on the Statute of Limitations, this court is bound to abide by this unappealed decision under the doctrine of the law of the case. (See Martin v City of Cohoes, 37 NY2d 162.) Hence, the only issue presented in the petition and answer before this court is whether the procedures outlined in the statute were followed.
An examination of the legislative findings and intent reveals that: "It is further intended that communication and *503 cooperation between the various state agencies, local agencies and local communities be fostered by this legislation, and that this will be best achieved by establishment of clearly defined procedures for the selection of locations for community residences, to best protect the interests of the mentally disabled and ensure acceptance of community residences by local communities. In the establishment of such community residences, the legislature recognizes the need to avoid, wherever practicable, a disproportionate distribution of community residences and other similar facilities.” (L 1978, ch 468, § 1.)
The procedure clearly defined in the statute mandates that a municipality have 40 days to suggest more suitable sites within its jurisdiction after receipt of the sponsoring agency’s intent to select a given site (Mental Hygiene Law, § 41.34, subd [b], par [1], cl [B]). If these sites are not satisfactory to the agency, notification shall be given to the municipality "which shall have fifteen days to suggest alternative sites or areas for the proposed community residential facility or facilities.” (Mental Hygiene Law, § 41.34, subd [b], par [4].)
The fostering of co-operation between the various interested groups is evidently essential to the establishment of successful community residences. The Legislature, therefore, provided that "Any operating certificate issued without compliance with the provisions of this section shall be considered null and void and continued operation of the facility may be enjoined.” (Mental Hygiene Law, § 41.34, subd [d].)
It is clear upon the facts presented that the respondents foreclosed all channels of communication at their announcement of their intent to schedule a hearing. A request of this nature prior to the expiration of the required 15 days was in violation of the statute and renders the commissioner’s determination null and void.
Accordingly, the petition is granted and the operating license, if issued, is vacated and any operation of the facility is enjoined.
The reinstitution of the entire proceeding is unnecessary, therefore petitioner is directed to submit to respondents suggestions as to alternative sites within 15 days after the service of a copy of the order to be entered hereon. If the sponsoring agency finds these alternatives unacceptable they may proceed pursuant to section 41.34 of the Mental Hygiene Law.