Peekskill Theatre, Inc., Appellant, *v.* Advance Theatrical Company of New York and Others, Respondents.

First Department, July 6, 1923.

Contracts — wrongful interference — action to restrain defendants from inducing motion picture producers and distributors to refuse to deal with plaintiff and to break contracts made — corporation whose officers are guilty will be restrained — producers and distributors restrained from refusing to deal with plaintiff.

In an action to restrain individuals who are officers of a motion picture producing corporation and interested in a motion picture theatre from inducing or coercing producers and distributors of motion pictures not to deal with the plaintiff, or to cease dealing with it, or from bringing about the breaking of contracts between producers and distributors and the plaintiff, and to restrain the defendant producers and distributors from refusing to deal with the plaintiff or breaking contracts with it, it appeared that the motive of the defendants was to ruin the plaintiff's business and not to allow it to procure films for exhibition.

*Held,* that the plaintiff is entitled to a temporary injunction restraining the individual defendants and the corporations in which they are interested from inducing producers and distributors not to deal with the plaintiff or to break existing contracts with it.

The act on the part of the producers and distributors in refusing to carry out their contracts to furnish films to the plaintiff induced by the other defendants for the purpose of ruining the business of the plaintiff gives a right of action against them as well as against those who wrongfully induced such action for the damage that the plaintiff suffered.

The producers and distributors will be restrained from breaking existing contracts which they have with the plaintiff and from refusing to sell films to plaintiff for the purpose of boycotting it.

APPEAL by the plaintiff, Peekskill Theatre, Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 1st day of May, 1923, denying plaintiff's motion for a temporary injunction.

*Nathan Burkan,* for the appellant.

*Guthrie, Jerome, Rand & Kresel* [*William Travers Jerome* of counsel; *William Rand, Jr.,* with him on the brief], for the respondents.

SMITH, J.:

The injunction asked for seeks to enjoin the defendants and all persons acting in concert with them or under their direction during the pendency of the action, from in any way urging, advising, requesting, inducing or coercing, or attempting so to do, distributors of motion pictures not to deal with plaintiff, or to cease dealing with the plaintiff, or to bring about the breaking of contracts between producers and distributors of motion pictures and the plaintiff, and generally from the doing of all acts complained of in the complaint herein, and for such further relief as may seem just and proper.

Upon the papers it appears that the Peekskill Theatre was constructed and operated for the purpose of the exhibition of moving pictures. Its proprietors were warned by individual defendants before the building was built that they would have trouble in getting films to exhibit. After the building was completed and when the plaintiff was ready to exhibit such pictures, it made various contracts with various producing firms for films, which contracts were broken through the procurement and inducements of the defendants Bernstein, Schenck and Mitchell, who are the officers of Loew's, Inc.

From the papers the conclusion is inevitable that it was the determined effort of these men to prevent the plaintiff from securing pictures and ruining its business. The individual defendants

were officers of Loew's, Inc., as vice-president, general manager and booking agent, and were interested in the Colonial Theatre, a rival theatre in said city; and plaintiff has been heavily damaged by its failure to procure films for exhibition through the interference of these several defendants. The argument of this motion at this late day in the session makes impossible a full discussion of the legal principles governing this case, and of the evidence to support the conclusions reached in this opinion. I can simply state the conclusions of fact from which follow the conclusions of law which are to guide us in our determination.

The distinction between lawful and unlawful competition and the resultant interference with another's business is not in any way obscure. The motive of the defendants is clearly shown, both by their acts, and by their statements that they would ruin the plaintiff's business and not allow the plaintiff to procure films for exhibition. That the defendants represent powerful interests aggravates rather than mitigates their unlawful acts. Both by the common law and by our statute a party is allowed free competition unhampered by the wrongful interference of third parties, even for the purpose of securing greater profit to themselves. (General Business Law, § 340, as amd. by Laws of 1918, chap. 490, and Laws of 1921, chap. 712; Pom. Eq. Juris. [4th ed.] §§ 20–24.) The action of the individual defendants in their deliberate conspiracy to prevent the plaintiff from obtaining these films for the purpose of ruining the plaintiff, not only renders those defendants liable to criminal prosecution, but makes them liable personally for all damages which the plaintiff has suffered; and the plaintiff is not confined to his action at law for damages; but the strong arm of equity can stop this unlawful interference by injunction; and to this equitable power plaintiff has appealed.

Many cases are cited in the appellant's brief which not only condemn the practice of the defendants, but establish without doubt both their criminal and civil responsibility therefor. Where a wrong is being perpetrated for malicious purposes, the court will not look for technical reasons to refuse relief; but, on the other hand, speedy relief should be granted, both that the plaintiff may be protected and that the public may learn that the principles of fair play and free competition are a part of the fundamental and the statutory law of this State and nation.

In *Kellogg* v. *Sowerby* (93 App. Div. 124) the law is stated that it is a crime under the laws of this State for two or more persons to conspire to do any act injurious to trade or to commerce. That the prevention of competition in business is an act injurious to trade in contemplation of law is held in *People* v. *Sheldon* (139

N. Y. 251). Section 580 of the Penal Law makes it a crime to prevent another from exercising a lawful trade or calling, or to do any other act, by force, threats, intimidation, or to interfere or threaten to interfere with the tools, implements or property belonging to or used by another, or with the use or employment thereof. In *Finnegan* v. *Butler* (112 Misc. Rep. 280) the rule is held. In *Newton Co.* v. *Erickson* (70 Misc. Rep. 291; affd., 144 App. Div. 939) Mr. Justice BLACKMAR granted an injunction in an action wherein it was claimed that the defendants, members of a union, had conspired to destroy the plaintiff's business by a boycott. In *Davis* v. *Zimmerman* (91 Hun, 489, 491) it was said: " Protection to property is guaranteed by the Constitutions of the United States and the State of New York, and it is the duty of the courts to enforce these guarantees. The business of a person conducted according to law is a property right. (*People* v. *Barondess*, 61 Hun, 571.) In that case Mr. Justice DANIELS held that a loss resulting from a suspension or interruption of a lawful business was an injury to property, and his opinion was adopted by the Court of Appeals. (133 N. Y. 649; *State* v. *Stewart*, 59 Vt. 273; *Barr* v. *Essex Trades Council*, 30 Atl. Rep. 881.) A court of equity has jurisdiction to restrain by injunction the carrying out of a conspiracy to destroy or injure propety, and the court is not deprived of its power because the acts are criminal."

It was held in *Roseneau* v. *Empire Circuit Co.* (131 App. Div. 429, 441) that malicious attempts leading to the violation of contracts to the injury of parties is illegal and will not be tolerated, and to this law cases are cited. In *Schlesinger* v. *Quinto* (201 App. Div. 487, 497) it is stated that " It has been repeatedly held that when a person knowingly and intentionally interferes with an express contract between two persons, and induces one of them to break that contract, the party injured can maintain an action against the wrongdoer."

Any act on the part of these producers, however, in refusing to carry out their contracts to furnish films to the plaintiff, induced by the defendant Loew's, Inc., for the purpose of ruining the business of the plaintiff, gives a right of action against them as well as against those who wrongfully induced such action for the damage that the plaintiff suffered.

Further authorities which sustain this conclusion are found in *Standard Engraving Co., Inc.,* v. *Volz* (200 App. Div. 758); *Posner Co.* v. *Jackson* (223 N. Y. 325, 332); *Motion Picture Patents Co.* v. *Universal Film Manufacturing Co.* (235 Fed. Rep. 398, 400, 401); *United States* v. *American Linseed Oil Co.* (262 U. S. 371, decided June 4, 1923); *United States* v. *Motion Picture Patents Co.* (225

Fed. Rep. 805); *American Foundries* v. *Tri-City Council* (257 U. S. 204); *Hitchman Coal & Coke Co.* v. *Mitchell* (245 id. 229); *Auburn Draying Co.* v. *Wardell* (227 N. Y. 1).

Loew's, Inc., is properly included within the injunction, because its principal officers interested in this rival theatre have used the corporation for the purpose of accomplishing their unlawful purposes, and these officers have made the corporation a party to the conspiracy. As for the other corporations named as defendants, while they probably could not be enjoined from breaking a contract if that alone were involved, nevertheless, if this contract were broken as a part of the conspiracy for the purpose of effectuating the boycott of the plaintiff's theatre, they are equally guilty with the individuals who have thus used them and made them a party to their scheme. That individuals may combine for the betterment of their own interests is unquestioned, as long as they confine their acts to those that are lawful, and as long as they do not interfere with the legal rights of a party against whom their action is aimed. There is no statutory or common law that permits a combination of parties, either capitalists or laborers, to effect an illegal purpose, even for the betterment of their own conditions. It may be that, as against these combinations, laborers have less protection except through combinations; but even then, they are given no immunity to infringe the rights of others, that either the common law or the statutes have granted them. It is claimed that there is no malice here shown, but only a desire to protect the defendants' interest by all their acts of which complaint is made; but the law condemns all acts trespassing upon the legal rights of others as malicious, as matter of law, and will grant reparation in damages, or an injunction where those damages are not capable of specific measurement.

This interference must be stopped, and the courts will have no difficulty either by injunction or, if necessary, by the administration of the criminal law, to prevent these unlawful acts. The courts have little patience with those who trifle with clear legal rights of another.

The order should be reversed, with ten dollars costs and disbursements, and an injunction should be issued restraining all parties from inducing the violation of any contracts made between the plaintiff and any film producers.

The injunction should further provide that the individual defendants and Loew's, Inc., should be restrained from inducing in any manner, directly or indirectly, film producers not to supply their films to the plaintiff corporation, except as and when they may need them for their own exhibition, and an injunction should

be granted restraining the other corporation defendants from refusing to sell to the plaintiff corporation any films for the purpose of boycotting the plaintiff and preventing the plaintiff from doing business, or for the purpose of assisting actors in accomplishing said purposes, and from conspiring with the codefendants or actors to deprive plaintiff of the films necessary to plaintiff's business.

CLARKE, P. J., MERRELL, McAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion for injunction granted.